**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellant,*

            v.

JOSHUA A. ELKINS,
            *Defendant-Appellee.*

No. 11-30135

D.C. No.
2:10-cr-00133-
LRS-1

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, District Judge, Presiding

Argued and Submitted
April 10, 2012—Seattle, Washington

Filed June 14, 2012

Before: Dorothy W. Nelson, A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

## COUNSEL

Michael C. Ormsby, United States Attorney, and Matthew F. Duggan of Spokane, Washington, and Lanny A. Breuer, Assistant Attorney General, Greg D. Andres and Scott A.C. Meisler (argued) of Washington, D.C., for the plaintiff-appellant.

Kailey Moran and Matthew Campbell (argued) of Spokane, Washington, for the defendant-appellee.

**OPINION**

CALLAHAN, Circuit Judge:

Congress, by enacting the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901 *et seq.*, in July 2006, sought to establish "a comprehensive national system for the registration" of sex offenders and offenders against children. 42 U.S.C. § 16901. In October 2010, a single count indictment issued against Joshua A. Elkins in the United States District Court for the Eastern District of Washington, charging him with traveling in interstate commerce and knowingly failing to register under SORNA in violation of 18 U.S.C. § 2250(a). On Elkins's motion, the district court dismissed the indictment on the ground that applying SORNA to Elkins on the basis of his pre-SORNA Washington conviction as a juvenile sex offender was punitive and therefore a violation of the Ex Post Facto Clause of the United States Constitution. The government appealed.

Following the approach set forth by the Supreme Court in *Smith v. Doe*, 538 U.S. 84 (2003), we conclude that applying SORNA to Elkins based on his state conviction as a juvenile sex offender is not punitive. We further conclude in light of *United States v. Crowder*, 656 F.3d 870 (9th Cir. 2011), that on the present record there is a sufficient basis for a factfinder to determine that Elkins knowingly failed to register in violation of § 2250(a). Accordingly, the district court's dismissal of the indictment must be reversed.

**I**

On February 10, 1994, when Elkins was fourteen years old, he pled guilty to child molestation in the first degree in the Superior Court of Washington for Skagit County. The Order of Disposition listed Elkins as "a middle offender," committed him to state care for 80 to 100 weeks, and instructed him

to register as a sex offender.[1] Elkins first registered with Washington in August 2000.

After being released from state custody on other charges, Elkins failed to register, and was convicted of a state failure-

---

[1]The Sex Offender Registration section reads:

As a person residing in Washington who has been found to have committed or been convicted of a sex offense, *YOU MUST REGISTER IMMEDIATELY WITH THE COUNTY SHERIFF* for the county of your residence, unless you are now in confinement. If you are now in confinement, you must register within 24 hours of your release from confinement. When you register, you must provide the sheriff with the following information:

  a) your name;

  b) your address;

  c) date and place of birth;

  d) your place of employment;

  e) the crime for which you were convicted;

  f) the date and place of conviction;

  g) any aliases used;

  h) your social security number;

  i) your fingerprints and photograph.

If you must register, you must also send written notice of any change of address to the county sheriff where registered within 10 days of establishing a new residence. If your new residence is in a different county, you must *also* register with the county sheriff of the county of your new residence within 10 days.

Failure to register when required is a Class C felony or gross misdemeanor, depending upon the charge you were convicted of. Conviction of a sexual offense will count as criminal history if you are convicted of any offense as an adult.

IT IS FURTHER ORDERED that this order shall remain in full force and effect until further order of the Court, or until the same is revoked, modified, or changed, or the period of community supervision is terminated by an order of this Court, as provided by law.

to-register offense in 2009. Elkins subsequently updated his registration in Washington in February, March, and April 2010. The registration forms Elkins signed also described his obligations should he move out of state.[2]

Sometime after April 2010, Elkins left Washington and traveled to his mother's home in California. He was arrested in California in September 2010 on a Washington warrant issued for a state probation violation. According to the government, Elkins told officers that "he had intended to go from California to Florida, where he believed the Washington warrant would not be binding."

On October 19, 2010, a one-count indictment was returned against Elkins in the Eastern District of Washington. The indictment alleges that Elkins, "a person required to register under the Sex Offender Registration and Notification Act, traveled in interstate commerce and did knowingly fail to register and update a registration, all in violation of 18 U.S.C. § 2250(a)."

In March 2011, Elkins filed a motion to dismiss the indictment, raising three arguments: (1) "the Government failed in performing its duty to inform Mr. Elkins of his responsibilities to register in violation of 42 U.S.C. § 16917 and therefore a conviction under 18 U.S.C. § 2250(a) would be a violation of the due process clause"; (2) "prosecution of Mr. Elkins under SORNA is a violation of the *ex post facto* clause as the conviction that subjects him to registration requirements

---

[2]The form Elkins signed in April 2010 advised:

> If you move out of this state, you must send written notice to the county sheriff with whom you last registered within 10 days of moving. You are hereby also on notice that the state to which you intend to move may also have sex/kidnap offender registration requirements which apply to you. If the state you are moving to required registration for your offense, you must do so within 10 days or you can be charged in this state for failure to maintain your registration.

occurred prior to the enactment or implementation of SORNA"; and (3) "application of SORNA's juvenile provision violates the *ex post facto* clause."

Following argument on the motion, the district court made several factual determinations:

> (1) "it is factually correct the State of Washington has not done those things that are necessary to comply with SORNA;"

> (2) "there is no notice in any of the materials that were supplied to the defendant that he had a duty under federal law to register under SORNA. That is uncontested and appears to be clear in the record;"

> (3) "[w]hile it may be true that the argument could be made that, since he was aware of the state requirement, he should have made further inquiry concerning the federal requirement. There's nothing in the materials that have been supplied suggesting that the state, at any time, undertook to give him that notice or that he was provided that notice orally or otherwise;" and

> (4) "the materials that were supplied to him have no statements in them concerning travel and no warning concerning whether or not there might be a criminal violation if he does not register under federal law."

The district court then noted that it was influenced by *United States v. Juvenile Male*, 590 F.3d 924 (9th Cir. 2010) ("*Juvenile Male I*"), even though that case concerned a federal, not a state, conviction.[3] The district court concluded that the application of SORNA to Elkins was punitive, explaining:

---

[3]*Juvenile Male I* was subsequently vacated by the Supreme Court in *United States v. Juvenile Male*, 131 S. Ct. 2860 (2011).

[In] this case, the original violation occurred 18 years ago; 1993 with a juvenile finding or conviction in 1994; no violations during the interim, apparently, that relate to this type of conduct, although there's a criminal record, if I've understood correctly.

Nevertheless, SORNA requires a higher classification system of hire [*sic*] risk. It imposes a lifetime — apparently a lifetime registration requirement that the state law does not. It requires posting of a picture. It requires that the defendant more often appear in person when directed to comply with the statute. It also requires, in the event of a conviction for violation, a far more serious guideline sentence.

Are those [requirements] punitive in nature as applied in this case? I'm going to read from [*Juvenile Male I*, 590 F.3d at 936]: "Because SORNA's juvenile registration provision, retroactively applied to former juvenile offenders, imposes a serious disability by making public otherwise confidential delinquency records relating to sexual offenses, and because the in-person registration requirement is substantially burdensome, SORNA's juvenile registration provision imposes an onerous 'affirmative disability or restraint' on former juvenile offenders," citing *Mendoza-Martinez*, 372 U.S. at 168, parallel citation omitted. "As we have already stated, this factor weighs heavily in support of a finding that SORNA's juvenile registration requirement has a punitive effect. Given the severity of its burdens, it would be difficult to reach any other conclusion."

Now, I'm recognizing that, in the State of Washington, our legislature, at an early date, required registration, potentially, of juvenile offenders. However, that doesn't open the door to allow the federal statute to be applied differently in this state than it would be

> applied in another state that doesn't have such a liberal, open-door policy concerning juvenile defenders and their records.
>
> Given that fact, it would be my conclusion that the federal law, as applied in this case, would find that this matter should be dismissed; and I'm going to grant the defendant's motion based upon the *Juvenile Male* decision.

The district court entered its order of dismissal on April 29, 2011, and the government filed a timely notice of appeal.

## II

In deciding this appeal, we first consider whether the application of SORNA to Elkins violates the Ex Post Facto Clause of the Constitution.[4] We separately consider whether applying SORNA to Elkins is punitive in effect because the registration requirement (1) is based on a pre-SORNA conviction, and (2) is based on Elkins's conviction as a juvenile sex offender. After concluding that there is no constitutional barrier to applying SORNA to Elkins, we briefly address his contention that SORNA cannot be applied to him because the government failed to provide him with adequate notice of SORNA. We conclude that under our precedent, the government is required to prove only that Elkins knew he was required to register as a sex offender. Accordingly, we reverse the district court's dismissal of the indictment and remand the case to the district court for further proceedings.

---

[4]We review the dismissal of an indictment on the basis of statutory interpretation or constitutional law de novo. *United States v. Begay*, 622 F.3d 1187, 1193 (9th Cir. 2010). We also review an alleged ex post facto violation de novo. *United States v. Arzate-Nunez*, 18 F.3d 730, 733 (9th Cir. 1994).

## A. Applying SORNA to Elkins Does Not Violate the Ex Post Facto Clause

1. *Requiring an individual to register under SORNA based on a conviction entered prior to SORNA's enactment does not violate the Ex Post Facto Clause.*

Elkins argues that the application of SORNA to his pre-SORNA conviction is retroactive and unconstitutional because the requirement that he register is based on a prior conviction and he became subject to SORNA after its enactment without any further action on his part. He further argues that SORNA is punitive because the failure to register statute exists in the criminal title (18 U.S.C. § 2250(a)), SORNA creates a new federal crime, and it subjects offenders to a potential ten-year prison term.

**[1]** Article I, Section 10 of the Constitution bars the enactment of any law that "imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Russell v. Gregoire*, 124 F.3d 1079, 1083 (9th Cir. 1997) (internal citation and quotation marks omitted).

In *Smith v. Doe*, 538 U.S. 84 (2003), the Supreme Court set forth the standard for evaluating whether a sex offender registration program violates the Ex Post Facto Clause. The Ninth Circuit had found that the Alaska legislature intended the Alaska Sex Offender Registration Act (the "Alaska Act") to be a nonpunitive civil regulatory scheme, but nonetheless held that its effects were punitive. *Id.* at 91-92. The Supreme Court reversed and upheld the Act's retroactive application to individuals whose convictions predated the Act.

**[2]** The Supreme Court held that the first inquiry is whether the legislature meant to impose punishment or enact a regulatory scheme. *Id.* at 92. If the intent behind a sex offender registration program "was to enact a regulatory

scheme that is civil and nonpunitive," a court must then "examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the legislature's] intention to deem it civil." *Id.* (internal quotation marks and citation omitted). The Supreme Court further held that "[b]ecause we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* (internal citation and quotation marks omitted).

[3] Elkins does not question that Congress, in enacting SORNA, intended to create a regulatory scheme, and we recognize that SORNA was created for the purpose of establishing a national system for the registration of sex offenders. This conclusion is implicit in the Supreme Court's opinion in *Reynolds v. United States*, 132 S. Ct. 975 (2012).[5] Moreover, in *Juvenile Male I*, 590 F.3d at 930, we noted that "S.E. has properly not disputed that in enacting SORNA, Congress intended to establish a civil regulatory scheme rather than a criminal one." Indeed, it appears that all of the circuit courts that have considered this issue agree that SORNA was enacted to create a national system for the registration of sex offenders.[6] Accordingly, the application of SORNA to Elkins

---

[5]The Court commented:

> The new federal Act reflects Congress' awareness that pre-Act registration law consisted of a patchwork of federal and 50 individual state registration systems. *See* 73 Fed. Reg. 38045 (2008). The Act seeks to make those systems more uniform and effective. It does so by repealing several earlier federal laws that also (but less effectively) sought uniformity; by setting forth comprehensive registration-system standards; by making federal funding contingent on States' bringing their systems into compliance with those standards; by requiring both state and federal sex offenders to register with relevant jurisdictions (and to keep registration information current); and by creating federal criminal sanctions applicable to those who violate the Act's registration requirements.

*Id.* at 978.

[6]*See United States v. Guzman*, 591 F.3d 83, 91 (2d Cir. 2010) ("[W]ith SORNA, Congress's goal was not simply to require sex offenders to regis-

will only violate the Ex Post Facto Clause if it is "so punitive either in purpose or effect as to negate" Congress's intent. *See Smith*, 538 U.S. at 92.

**[4]** Elkins correctly asserts that SORNA is backward looking insofar as it looks to a prior-in-time conviction as a basis for requiring registration. However, the courts of appeals have consistently rejected Elkins's contention that this renders SORNA punitive. In *United States v. George*, 625 F.3d 1124, 1131 (9th Cir. 2011), we held that SORNA could be applied based on a prior conviction because failure to register is a continuing offense. We subsequently vacated our opinion in *George* on other grounds. *United States v. George*, 672 F.3d 1126 (9th Cir. 2012). However, in *United States v. Clements*, 655 F.3d 1028, 1029 (9th Cir. 2011), we reiterated that "[f]ailure to register pursuant to SORNA, or to keep one's

---

ter or to penalize the failure to do so, but rather to establish[ ] a comprehensive national system for the registration of those offenders.") (internal quotation marks and citation omitted); *United States v. Shenandoah*, 595 F.3d 151, 154 (3d Cir. 2010) ("SORNA creates a national sex offender registry with the goal of eliminating inconsistencies among state laws."), *abrogated on other grounds by Reynolds*, 132 S. Ct. 975; *United States v. Gould*, 568 F.3d 459, 464 (4th Cir. 2009) ("SORNA's purpose [is] to strengthen and increase the effectiveness of preexisting sex offender registration and notification"); *United States v. Young*, 585 F.3d 199, 204 (5th Cir. 2009) ("[W]e now hold — in line with all of our sister Circuits to have considered the issue — that SORNA is a civil regulation and, thus, does not run afoul of the Constitution's ex post facto prohibitions."); *United States v. Utesch*, 596 F.3d 302, 306 (6th Cir. 2010) ("Congress enacted SORNA to create a national system for the registration of sex offenders."); *United States v. May*, 535 F.3d 912, 920 (8th Cir. 2008) ("SORNA's registration requirement demonstrates no congressional intent to punish sex offenders. Congress described SORNA as a public safety measure."), *abrogated on other grounds by Reynolds*, 132 S. Ct. 975; *United States v. Lawrance*, 548 F.3d 1329, 1333 (10th Cir. 2008) ("SORNA is both civil in its stated intent and nonpunitive in its purpose"); *United States v. Brown*, 586 F.3d 1342, 1347 (11th Cir. 2009) ("SORNA created a comprehensive national system for registering sex offenders in order to track their interstate movement.").

registration current, is a continuing offense." In *United States v. Felts*, 674 F.3d 599, 605-06 (6th Cir. 2012), the Sixth Circuit addressed the same argument that Elkins makes here:

> Felts also argues that retroactive application of SORNA violates the Constitution's Ex Post Facto Clause, as it increases the punishments for Felts's earlier crimes. This argument has been consistently rejected. In *Smith v. Doe*, the Supreme Court upheld Alaska's sex-offender-registration statute, finding that it was not punitive, but civil in nature, and not in violation of the Ex Post Facto Clause. 538 U.S. 84 . . . (2003). . . . Felts attempts — to little avail — to distinguish SORNA from the Alaska statute in question, but fails to address the unanimous consensus among the circuits that SORNA does not violate the Ex Post Facto Clause. SORNA provides for a conviction for failing to register; it does not increase the punishment for the past conviction.

674 F.3d at 605-06. We agree and join our sister circuits in holding that requiring a person to register under SORNA based on a conviction entered prior to SORNA's enactment does not violate the Ex Post Facto Clause.[7]

---

[7]In support of its claim of consensus on the part of the circuit courts, the Sixth Circuit noted:

> Relying on *Smith*, circuit courts have consistently held that SORNA does not violate the Ex Post Facto Clause. *See, e.g., United States v. DiTomasso*, 621 F.3d 17, 25 (1st Cir. 2010); *Guzman*, 591 F.3d at 94 (2d Cir. 2010); *Shenandoah*, 595 F.3d at 158-59; *George*, 625 F.3d at 1131; *Gould*, 568 F.3d at 466; *United States v. Young*, 585 F.3d 199, 203-06 (5th Cir. 2009); *United States v. Ambert*, 561 F.3d 1202, 1207 (11th Cir. 2009); *United States v. May*, 535 F.3d 912, 919-20 (8th Cir. 2008), *abrogated on other grounds by Reynolds v. United States*, . . . 132 S. Ct. 975 . . . (2012); [*United States* v.] *Hinckley*, 550 F.3d [926] at 936 (10th Cir. 2008).

*Felts*, 674 F.3d at 606.

2. *Federal prosecution under SORNA is not conditioned on a state's implementation of the administrative provisions of SORNA.*

**[5]** A related argument raised in *George*, and arguably inherent in Elkins's challenge to SORNA, is that SORNA cannot be applied to an individual if the state in which he resides has not implemented SORNA. We noted, however, that the defendant in *George* "misconstrues the scope and effect of SORNA's implementation provision," and that the fact that states had until July 2009 to implement the administrative portions of SORNA "does not preclude federal prosecution for George's failure to register under SORNA."[8] *George*, 625 F.3d at 1128. We held that "[w]ithout regard to whether SORNA is implemented by Washington or any other state, registration under it is required." *Id.* Although, as noted, we subsequently vacated our opinion on other grounds, *George*, 672 F.3d 1126, we continue to hold that the federal government's prosecution of an alleged violation of SORNA is not dependent on the individual state's implementation of the administrative portion of SORNA. As noted by the Sixth Circuit, the circuit courts are in accord on this issue.[9] *Felts*, 674 F.3d at 603.

---

[8]We cited 72 Fed. Reg. at 8,895, which states: "In contrast to SORNA's provision of a three-year grace period for jurisdictions to implement its requirements, SORNA's direct federal law registration requirements for sex offenders are not subject to any deferral of effectiveness." *George,* 625 F.3d at 1128.

[9]The Sixth Circuit commented:

The duty to register in a state registry is independent of a state's degree of implementation of SORNA. *United States v. Guzman*, 591 F.3d 83, 93 (2d Cir. 2010) ("SORNA creates a federal duty to register with the relevant existing state registries regardless of state implementation of the specific additional requirements of SORNA.") . . . ; *United States v. Shenandoah*, 595 F.3d 151, 157 (3d Cir. 2010), *abrogated on other grounds by Reynolds v. United States*, . . . 132 S. Ct. 975 . . . (2012); *United States v. Brown*, 586 F.3d 1342, 1349 (11th Cir. 2009) ("SORNA was not

### 3. *Applying SORNA to Elkins based on his juvenile conviction is not barred by the Ex Post Facto Clause.*

The argument that Elkins advanced successfully in the district court was that applying SORNA based on the Washington state sex offender determination made when he was fourteen years old is punitive and accordingly violates the Ex Post Facto Clause.[10] Relying on the opinion in *Juvenile Male I*, 590 F.3d 924, the district court reasoned that Elkins's "prior conviction, a juvenile adjudication, has special significance in considering the issue of the Ex Post Facto Clause." The dis-

---

enacted in a vacuum. To the contrary, every state and the District of Columbia had a sex offender registration law prior to 2006. An individual may therefore comply with SORNA's registration requirements by registering through the state's sex offender registry, even if that jurisdiction has not implemented SORNA's administrative procedures.") (citations omitted); *United States v. Gould*, 568 F.3d 459, 465-66 (4th Cir. 2009) ("We conclude that the requirement imposed on individuals to register is independent of the requirement imposed on the States to implement the enhanced registration and notification standards of SORNA. Accordingly, SORNA's requirement that a sex offender register applies whether registration would be accomplished through pre-SORNA registration facilities or under SORNA-compliant programs."); *United States v. Hinckley*, 550 F.3d 926, 939 (10th Cir. 2008), *abrogated on other grounds by Reynolds v. United States*, . . . 132 S. Ct. 975 . . . (2012) (finding that defendant had "knowledge of his duty to register under similar state and federal provisions").

*Felts*, 674 F.3d at 603-04.

[10]SORNA's definition of sex offender includes the following provision:

The term "convicted" or a variant thereof, used with respect to a sex offense, includes adjudicated delinquent as a juvenile for that offense, but only if the offender is 14 years of age or older at the time of the offense and the offense adjudicated was comparable to or more severe than aggravated sexual abuse (as described in section 2241 of Title 18), or was an attempt or conspiracy to commit such an offense.

42 U.S.C. § 16911(8).

trict court dismissed the indictment citing the statement in *Juvenile Male I*, 590 F.3d at 941-42, that "[i]n some instances, the retroactive implementation of SORNA's provisions will most certainly wreak havoc upon the lives of those whose conduct as juveniles offended the fundamental values of our society but who, we hope, have been rehabilitated."

The district court's approach is legally questionable and is not factually supported by the record. First, as noted, the opinion in *Juvenile Male I*, 590 F.3d 924, has been vacated by the Supreme Court as having become moot. *United States v. Juvenile Male*, 131 S. Ct. 2860 (2011). Second, a subsequent opinion in *United States v. Juvenile Male*, 670 F.3d 999 (9th Cir. 2012) ("*Juvenile Male II*"), qualifies the concerns expressed in *Juvenile Male I*.

In *Juvenile Male I*, the court recognized that "an essential aspect of the juvenile justice system has been to maintain the privacy of the young offender and, contrary to our criminal law system, to shield him from the dissemination of truthful information and transparency that characterizes the punitive system in which we try adults." 590 F.3d at 926 (internal quotation marks omitted). The opinion reviewed the Federal Juvenile Delinquency Act, 18 U.S.C. § 5031 *et seq.*, ("FJDA") and determined that its confidentiality provisions, such as prohibiting the public release of the name or picture of the juvenile, were "quite essential to the Act's statutory scheme and overarching rehabilitative purpose." *Id.* at 929 (quoting *United States v. Three Juveniles*, 61 F.3d 86, 88 (1st Cir. 1995)). The court distinguished the application of SORNA to juveniles from its application to adults, explaining that the former "does not merely provide for further public access to information already available; it makes public information about sex offenders that would otherwise permanently remain confidential and exposes persons who were adjudicated delinquent years before to public humiliation and ignominy for the first time." *Id.* at 935. The court expressed concern that SORNA's juvenile registration provision makes

"public otherwise confidential delinquency records relating to sexual offenses" and imposes on a person the burden of in-person registration. *Id.* at 936. The opinion concluded "that the retroactive application of SORNA's juvenile registration and reporting requirement violates the Ex Post Facto Clause of the United States Constitution" because "[i]n some instances, the retroactive implementation of SORNA's provisions will most certainly wreak havoc upon the lives of those whose conduct as juveniles offended the fundamental values of our society but who, we hope, have been rehabilitated." *Id.* at 941-42.

In *Juvenile Male II*, 670 F.3d 999, we again recognized that SORNA conflicted with the FJDA. "Because it is clear that the government's public release of juvenile records authorized by SORNA would have been prohibited under the FJDA prior to the passage of SORNA, we find that the two statutes conflict." *Id.* at 1008. However, the court concluded that because SORNA was the later-enacted, more specific provision,[11] and Congress was aware of and intended SORNA's modification of the FJDA,[12] "the district court properly applied SORNA's

---

[11]The court noted:

> SORNA unambiguously directs juveniles over the age of 14 convicted of certain aggravated sex crimes to register, and thus carves out a narrow category of juvenile delinquents who must disclose their juvenile crimes by registering as a sex offender. For all other juvenile delinquents, the FJDA's confidentiality provisions remain in force.

670 F.3d at 1008.

[12]The court explained:

> The relationship between SORNA and the FJDA is further clarified by Congress's clearly stated intent to limit confidentiality in the case of certain juvenile sex offenders. *See* H.R. Rep. 109-218, pt. 1, at 25 (2005) ("While the Committee recognizes that States typically protect the identity of a juvenile who commits criminal acts, in the case of sexual offenses, the balance needs to change; no longer should the rights of the juvenile offender outweigh the

registration requirements to the juvenile defendants in these cases." *Id.* at 1008. Thus, *Juvenile Male II* holds that not all applications of SORNA to individuals based on juvenile sex offender determinations are sufficiently punitive to violate the Ex Post Facto Clause.

We need not further reconcile *Juvenile Male I* with *Juvenile Male II* because in this case the record shows that the factual predicates underlying the concerns expressed in *Juvenile Male I* are not present. Here, Washington law, not SORNA, first mandated the dissemination of information about Elkins's juvenile sex offender determination and imposed on Elkins the burden of registration. The state court's 1994 Order of Disposition required Elkins to register immediately with the county sheriff. It further required that Elkins provide the sheriff considerable information, including his fingerprints and photograph. In addition, the Order (a) required that Elkins provide written notice to the sheriff any time that he established a new residence, (b) stated that failure to do so is a "Class C felony or gross misdemeanor," and (c) provided that the order was to remain in effect until modified or revoked. Moreover, the Washington registration form that Elkins signed in February 2010 required that he register every three months for life or until he is "relieved of the duty to register by court order."

---

rights of the community and victims to be free from additional sexual crimes. . . . H.R. 3132 strikes the balance in favor of protecting victims, rather than protecting the identity of juvenile sex offenders."); 152 Cong. Rec. S8012, S8023 (daily ed. July 20, 2006) (statement of Sen. Kennedy) ("This compromise allows some offenders over 14 to be included on registries, but only if they have been convicted of very serious offenses."). Thus, Congress was aware that it was limiting protections under the FJDA by applying SORNA to certain juvenile delinquents, and intended to do so.

670 F.3d at 1008.

**[6]** The district court noted several differences between the registration requirements under Washington law and SORNA, but these differences are minor and do not amount to proof of punitive effect. Under both Washington and federal law, Elkins essentially is required to register for life. Under Washington law, the registration requirement is "indefinite." Wash. Rev. Code § 9A.44.140(1). Elkins may apply to be relieved of the obligation to register upon a showing "by a preponderance of the evidence that [he] is sufficiently rehabilitated to warrant removal from the central registry of sex offenders." Wash. Rev. Code § 9A.44.143(2)(c). However, he also must show that he "has not been adjudicated or convicted of a violation of RCW 9A.44.132 (failure to register) during the sixty months prior to filing the petition." Wash. Rev. Code 9A.44.143(2)(b). Under federal law, Elkins's registration requirement could be reduced to 25 years if he maintained a clean record. *See* 42 U.S.C. §§ 16915(a)(3), (b)(2)(B).

Similarly, it appears that under both state and federal law, Elkins is required to report in person every three months. The forms Elkins signed when he registered in February, March, and April 2010 contain registration requirements that are similar to the provisions of 42 U.S.C. § 16916(3). Also, both Washington law and SORNA require the posting of a picture. Elkins's 1994 Order of Disposition required that he provide his "fingerprints and photograph." Thus, whatever minor differences there may be in the reporting requirements, they are not sufficient to render SORNA punitive when applied to Elkins.

**[7]** In sum, even under the rationale of *Juvenile Male I*, the application of SORNA to Elkins is not punitive because such application did not make "public otherwise confidential delinquency records relating to sexual offenses," 590 F.3d at 936, and did not substantially change Elkins's obligation to register as a sexual offender. Elkins has not presented the clear proof required to transform the application of SORNA to him into a criminal penalty prohibited by the Ex Post Facto Clause. *See*

*Smith,* 538 U.S. at 92. Accordingly, we hold that the district court erred when it dismissed the indictment.

### B.    There Is Sufficient Evidence That Elkins Had Knowledge Of His Obligation To Register To Proceed To Trial.

Elkins argues that he cannot be convicted of knowingly failing to register under SORNA because the district court found that he had no actual notice that he was required to register under SORNA. He cites *Lambert v. California*, 355 U.S. 225, 228-303 (1957), for the proposition that notice is required where a penalty might be imposed for a mere failure to act. The government counters that *Lambert* is inapplicable because convicted sex offenders are generally subject to registration requirements in all fifty states, and Elkins was aware that he was obligated to register as a sex offender.

In *United States v. Crowder*, 656 F.3d 870, we agreed with the government. Crowder argued that he could not be convicted under SORNA because "the government failed to plead and prove beyond a reasonable doubt that he knew registration was required by SORNA." *Id.* at 873. We noted that Crowder "urges us to read the language of § 2250(a)(3) (that the defendant 'knowingly fails to register or update a registration as required by [SORNA]') as requiring the government to plead and prove that the defendant knew that he had failed to register and *also* knew that such registration was required by SORNA." *Id.*

**[8]** We, however, held that "knowingly" in 18 U.S.C. § 2250(a)(3) applies only to the "fails to register or update a registration" provision and not to the phrase "as required by [SORNA]."[13] *Id.* at 875. We observed that "a convicted sex

---

[13]The opinion noted:

> Because state registration schemes have been around for years in all 50 states, *see Smith v. Doe*, 538 U.S. 84, 89-90 (2003), and

offender who knowingly fails to register would ordinarily be committing a crime, regardless whether that individual knows such failure also violates SORNA." *Id.* at 876. We concluded:

> [W]e interpret § 2250(a)(3) as requiring the government to prove that a convicted sex offender knew of a registration requirement and knowingly failed "to register or update a registration." It does not require the government to prove that the sex offender also knew that the failure to register violates SORNA. This interpretation is consistent with the Supreme Court's rule that generally "the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense," *Bryan* [*v. United States*], 524 U.S. [184] at 193 [(1998)], . . . while also ensuring that the defendant cannot be convicted of apparently innocent conduct.

656 F.3d at 876-77.

**[9]** Our opinion in *Crowder* is controlling.[14] The one-count indictment charges Elkins with violating 18 U.S.C. § 2250(a). In addition, the record indicates that a factfinder could determine that Elkins knew, or should have known, of his obligation to register under Washington law because of his travel to California. Accordingly, following *Crowder*, Elkins's alleged lack of knowledge of SORNA does not support the dismissal of the indictment. Elkins may raise as a defense that he did not know, and it was not reasonable to expect him to know,

---

convicted sex offenders know (or should know) of their own state registration requirements, a convicted sex offender who "knowingly fails to register or update a registration" is on notice or chargeable with notice of the facts constituting the offense.

656 F.3d at 875.

[14]*See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (noting that "a three-judge panel may not overrule a prior decision of the court").

that his travel to California triggered a reporting requirement under Washington law. However, under Ninth Circuit precedent, and consistent with the opinions of our sister circuits, to the extent that Elkins "knowingly" violated his obligation to register under Washington law, he had the requisite intent to support a conviction under SORNA.[15] *Crowder*, 656 F.3d at 876.

# III

In enacting SORNA, Congress sought to establish a comprehensive national system for the registration of sex offenders and offenders against children. 42 U.S.C. § 16901. In *Smith*, the Supreme Court held that where the legislature in enacting a sex offender registration program intended a civil remedy, clear proof is required to show that the "statutory scheme is so punitive either in purpose or effect as to negate [the legislature's] intention to deem it civil." 538 U.S. at 92 (internal quotation marks omitted). We reaffirm our agreement with our sister circuits that SORNA is not punitive merely because its registration requirement can be based on a pre-SORNA conviction. We further hold that the application

---

[15]In *Crowder*, we noted that:

[W]e join our sister circuits, all of which have read the word "knowingly" in § 2250(a)(3) as not applying to the "as required by [SORNA]" clause. *See United States v. Stevens*, 640 F.3d 48, 51-52 (1st Cir. 2011); *United States v. Fuller*, 627 F.3d 499, 507-08 (2d Cir. 2010); *United States v. Vasquez*, 611 F.3d 325, 328-29 (7th Cir. 2010), *cert. denied*, ___ U.S. ___, 131 S. Ct. 2930 (2011); *United States v. Shenandoah*, 595 F.3d 151, 159 (3d Cir.), *cert. denied*, ___ U.S. ___, 130 S. Ct. 3433 (2010); *United States v. Griffey*, 589 F.3d 1363, 1367 (11th Cir. 2009) (per curiam), *cert. denied*, ___ U.S. ___, 130 S. Ct. 3290 (2010); *United States v. Whaley*, 577 F.3d 254, 262 n. 6 (5th Cir. 2009); *United States v. Gould*, 568 F.3d 459, 468 (4th Cir. 2009), *cert. denied*, ___ U.S.___, 130 S. Ct. 1686 (2010)*; Baccam*, 562 F.3d at 1199-1200.

656 F.3d at 877 (parallel L. Ed. 2d cites omitted).

of SORNA to Elkins based on his Washington juvenile sex offender conviction is not punitive because Washington law, not SORNA, first required Elkins to disclose information and to register as a sex offender. Finally, pursuant to our opinion in *Crowder*, 656 F.3d 870, we determine that there is sufficient evidence that Elkins knew of his obligation to register in Washington as a result of his travel to California to allow this matter to proceed to trial. The district court's dismissal of the indictment is **REVERSED** and the case is **REMANDED** to the district court.